IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-00162-FL

| | |
|---|---|
| **Michael Anthony Hollowell,**<br><br>     Plaintiff,<br><br>v.<br><br>**Carolyn Colvin**, Acting Commissioner of Social Security,<br><br>     Defendant. | **Memorandum & Recommendation** |

  Plaintiff Michael Anthony Hollowell instituted this action on August 27, 2014, to challenge the denial of his application for social security income. Hollowell claims that Administrative Law Judge McArthur Allen erred in his determination by rejecting the opinion of Hollowell's treating physician without sufficient reasoning and that he also erred at step five by not specifying the frequency of alternating the sit/stand option when presenting hypothetical questions to the Vocational Expert ("VE"). Hollowell also claims that the additional evidence submitted to the Appeals Council contradicts the findings of ALJ Allen. Both Hollowell and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 21.

  After reviewing the parties' arguments, the court has determined that ALJ Allen reached the appropriate decision. There is substantial evidence to support both ALJ Allen's consideration of the opinions of treating physician, Dr. Mark Heffington, and his step five finding of a sit/stand option, which did not require a frequency in changing positions to be specified. The additional evidence from Dr. Heffington submitted to the Appeals Council does not support a reversal of

ALJ Allen's decision. Therefore the undersigned magistrate judge recommends[1] that Hollowell's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

I.   **Background**

On June 6, 2011, Hollowell filed an application for disability insurance benefits on the basis of a disability that allegedly began on April 22, 2009. After his claim was denied at both the initial stage and upon reconsideration, Hollowell appeared before ALJ Allen for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Allen determined that Hollowell was not entitled to benefits because he was not disabled. Tr. at 24–35.

ALJ Allen determined that Hollowell had the Residual Functional Capacity ("RFC") to perform light work with the following limitations: he can only occasionally climb stairs and ramps; he can only occasionally perform any bending, balancing, stooping, crawling, kneeling, or crouching; he can perform occasional overhead reaching bilaterally and frequent, but not constant, reaching in any other direction bilaterally; he should avoid hazardous machinery and exposure to vibrations; he can perform frequent, but not constant, handling, fingering, and grasping; he requires a sit/stand or adjust option, in which he alternates in those positions without a loss of production; and he will need to wear knee, shoulder, and wrist braces that will not affect production. *Id.* at 28–29. ALJ Allen concluded that Hollowell was incapable of performing his past work as a commercial fisherman but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing, including assembler, packer, and marker-price. *Id.* at 34–35. Thus, ALJ Allen found that Hollowell was not disabled. *Id.* at 35. After unsuccessfully seeking review by

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

the Appeals Council, Hollowell commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on August 27, 2014. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is

assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Evidence

Hollowell suffers from several conditions, including diabetes mellitus, diabetic neuropathy, pain, carpal tunnel syndrome, cubital tunnel syndrome, left rotator cuff tendonopathy, degenerative joint disease of the lumbar spine, and obesity. The medical records shows that in December 2009, Hollowell presented to the Emergency Room complaining of tingling in his fingers and left hand. Tr. at 232. The diagnosis was ulnar neuropathy, for which doctors gave him medication and a splint. *Id.* at 233–34.

Hollowell underwent a consultative examination on July 30, 2011, with Dr. Stephanie Plummer. *Id.* at 243–47. He reported back pain radiating into his feet and bilateral hand numbness. *Id.* at 243. He further stated that he was independent in activities of daily living but sometimes used a cane. *Id.* He stated that pain medications helped but that he could not afford them. *Id.* Dr. Plummer noted that Hollowell has 20/50 vision in both eyes with correction, that he had negative Tinel's (nerve damage), Phalen's (carpal tunnel) and Spurling's (cervical compression) tests and that there was no muscle atrophy or joint tenderness. *Id.* at 245. Dr. Plummer also reported that Hollowell scored a 5 on a 5 point scale in a grip strength exam and was able to grasp objects bilaterally. *Id.* Dr. Plummer concluded that Hollowell had bilateral hand numbness and lumbago and that he could sit/stand/walk and lift/carry without limitations. *Id.* at 246.

4

Hollowell began treatment with Dr. R.W. Hudson at Hope Clinic in August 2011 for pain in his hands, wrists, and feet. *Id.* at 260–61. He was referred for orthopedic and diabetic care. *Id.* He returned to Hope Clinic in 2011 and 2012 for refills of his prescriptions. *Id.* at 281–98.

Hollowell again sought treatment for numbness and pain in his arms and hands in September 2011 from Dr. John Steel. *Id.* at 248–52. Dr. Steel concluded that testing showed widespread, bilateral symmetric peripheral neuropathy with superimposed entrapment neuropathies at common sites of potential nerve compression. *Id.* at 252. He recommended splinting and medication and opined that Hollowell may benefit from surgical decompression. *Id.*

Dr. Mark Wertman also treated Hollowell for wrist pain and numbness at this time. *Id.* at 255. The records note that Hollowell had decreased hand strength bilaterally, but normal elbow, wrist, and shoulder strength. *Id.* at 257. He also had positive Phalen's and median nerve compression tests. *Id.* Dr. Wertman diagnosed Hollowell with a lesion of the ulnar nerve and carpal tunnel syndrome, for which he recommended night splints. *Id.*

In July 2012, Hollowell underwent an MRI of the lumbar spine which revealed mild degenerative changes in the lower lumbar spine with no significant disc disease. *Id.* at 266, 300. In October 2012, Hollowell went to the Emergency Room where he was diagnosed with shoulder pain and dental issues. *Id.* at 274. Hollowell denied any numbness or tingling in any extremity. *Id.* at 270. He was given medication and referred for further orthopedic and dental care. *Id.* at 274.

Hollowell again went to the Hope Clinic in January 2013 with complaints of severe left shoulder pain. *Id.* at 309. At this same time, Dr. Heffington provided a statement concluding that Hollowell had diabetes mellitus, diabetic neuropathy, bilateral carpal and cubital tunnel syndromes, a left rotator cuff injury, and degenerative disc disease of the lower spine. *Id.* at 276.

5

Dr. Heffington opined that Hollowell could sit/stand for ten minutes at a time, sit/stand a total of two hours in an eight hour workday, and needed to walk for ten minutes every 20 minutes. *Id.* at 277–78. He further opined that Hollowell would need to shift at will from sitting, standing, or walking; he needed to take 30 minute breaks six to eight times during an eight hour shift; and he was likely to be absent from work four or more times per month. *Id.* at 278–79. Dr. Heffington also found that Hollowell had significant limitations in reaching, fingering, and grasping and that he could occasionally lift less than ten pounds. *Id.* at 278. Hollowell made a return visit to Hope Clinic in April 2013 for prescription refills, and it was noted that he had an antalgic gait. *Id.* at 303.

At the hearing, Hollowell testified that he last worked as a commercial fisherman in 2009 but the work took a toll on his body. *Id.* at 45–46. He does sweeping and cooking but no longer drives. *Id.* at 48. Hollowell also testified that he has blurry vision and double vision, but had not had a recent eye exam. *Id.* at 49. He stated he does not have the money for glasses. *Id.* He stated he has difficulty sleeping in part because he wears braces. *Id.* at 50. Hollowell also stated that he has problems looking up and down and left to right because he may lose his balance or have pain. *Id.* at 51. Hollowell testified that his neck is stiff and that he is unable to raise his arms above his head or out to the side without pain. *Id.* at 51–52.

Hollowell testified that he was recommended for surgery for his carpal tunnel syndrome but could not afford it and, because he had nerve damage as well, it may not have improved his condition. *Id.* at 53–54. He also stated that he has shooting pain in his left shoulder and lots of pressure in his lower back, which prevents him from standing up straight. *Id.* at 54–55. Hollowell further testified that his legs are weak and that he cannot stand still. *Id.* at 56. He reported that his

6

Case 4:14-cv-00162-FL   Document 23   Filed 08/12/15   Page 6 of 18

wife helped him get dressed for the hearing; that his medication does not eliminate his pain but does ease it; and his medications cause him to become sleepy. *Id.* at 59–60.

### D.     Additional evidence

Hollowell first contends that the Appeals Council erred by failing to discuss the additional evidence he submitted. The additional evidence consists of: an undated letter from Hollowell to the Appeals Council; a July 10, 2013 letter from Hal Griffin, Hollowell's non-attorney representative, posing questions to Dr. Heffington, and Dr. Heffington's response thereto; and Dr. Heffington's October 17, 2013 clinical assessment of pain. *Id.* at 229–30; 310–13. The Appeals Council noted the additional evidence and made it part of the record, but concluded it did not provide a basis for changing ALJ Allen's decision and denied review. *Id.* at 1–2. Hollowell contends that the additional evidence fills an evidentiary gap in the record and warrants remand for further fact-finding. The Commissioner submits that the evidence fails to provide a basis for reversing ALJ Allen. The undersigned agrees because Hollowell failed to show that the evidence was both new and material.

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991); 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must

7

consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. However, the Appeals Council does not need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011); *Williams v. Colvin*, No. 5:12-CV-529, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (noting that the Appeals Council does not need to explain its reason for denying review of an ALJ decision) (citing *Meyer*, 662 F.3d at 702).

Hollowell's letter to the Appeals Council states that he has many impairments including bilateral neuropathy of the elbows and wrists, carpal tunnel in both hands and degenerative disc disease of the lumbar spine. Tr. 229–30. He states that he is in constant pain, suffers from depression and mood swings, and has trouble with basic tasks. *Id.* He further avers that he has not been able to obtain more medical treatment because he is unable to afford it. *Id.* Hollowell also states that his treating physician, Dr. Heffington, knows his conditions better than anyone. *Id.*

The Appeals Council also received correspondence from Mr. Griffin to Dr. Heffington, posing five questions, and Dr. Heffington's responses. *Id.* at 310. Dr. Heffington stated that he examined Hollowell on 12 occasions and that he believed a treating physician's opinions were more knowledgeable and accurate than the findings of another examiner who had seen Hollowell for only 30 minutes. *Id.* Dr. Heffington affirmed that he had reviewed Dr. Plummer's report dated July 30, 2011, and stated that it was clear from the record that Dr. Plummer had not examined Hollowell's prior medical records. *Id.* Dr. Heffington stated that he disagreed with Dr. Plummer's findings, specifically the neurological exam, because Hollowell had positive Phalen's signs in both wrists and positive Tinel's signs in both wrists and both elbows. *Id.* Dr. Heffington

8

Case 4:14-cv-00162-FL   Document 23   Filed 08/12/15   Page 8 of 18

also disagreed with Dr. Plummer's assessment that Hollowell was in no acute distress and found her conclusion was not consistent with her own statement. *Id.*

Also presented to the Appeals Council was an October 13, 2013 Clinical Assessment of Pain form submitted by Dr. Heffington. *Id.* at 311–13. In this questionnaire, Dr. Heffington offered the following opinions as to Hollowell's pain: the pain is profound and intractable, virtually incapacitating him; physical activity increases the pain to such an extent that bedrest and/or medications are necessary; medications may be expected to cause significant side effects which may limit the effectiveness of work duties or the performance of everyday activities; he will be totally restricted and unable to function at a productive level; although pain may be less intense or less frequent, it will remain a significant element in Hollowell's life; and treatment has no appreciable effect and only briefly alters the pain Hollowell experiences. *Id.* Dr. Heffington further stated that Hollowell has neuropathic pain in all extremities, his mobility is severely limited, and that he has functional limitations in standing, walking, lifting and manipulating objects. *Id.* at 313.

In considering this additional evidence, the letter to Dr. Heffington is dated July 10, 2013, and Dr. Heffington's clinical assessment of pain is dated October 17, 2013. Both these post-date ALJ Allen's decision. Additionally, Hollowell's letter and Dr. Heffington's responses to Mr. Griffin's letter are undated. It is unclear, then, whether the additional evidence relates to the relevant time period at issue before ALJ Allen. *See* 20 C.F.R. § 404.1527; 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision.").

9

Case 4:14-cv-00162-FL   Document 23   Filed 08/12/15   Page 9 of 18

Nevertheless, assuming that such evidence related to the relevant time period at issue, it also must also be new and material to require consideration by the Appeals Council. This additional evidence is, however, duplicative of evidence before ALJ Allen. For instance, in his decision, ALJ Allen noted Dr. Heffington's diagnoses, his recommendation for surgery and his assessed limitations. Tr. at 31, 33. Additionally, Hollowell's allegations of pain were well-documented not only in the medical record but also in the hearing testimony. Consequently, these submissions cannot be considered new.

Further, the Defendant also points out that while Dr. Heffington states that Hollowell had positive Phalen's and Tinel's signs, he does not identify the treatment note containing these findings. While Dr. Wertman noted a positive Phalen test, Dr. Plummer found that Hollowell had negative Tinel's and Phalen's tests upon examination. Additionally, despite Dr. Heffington's assessment that Hollowell was unable to perform at a productive level, state agency medical consultants opined that Hollowell could perform light work and Dr. Plummer found that Hollowell had no exertional limitations. Given these contrary findings, the additional evidence submitted from Dr. Heffington cannot be deemed material inasmuch as there is not a reasonable probability that it would change the outcome of the case given that it conflicts with other evidence in the record. *See Williams v. Colvin*, No. 5:12–CV–529–BO, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (holding the report is not material because the alleged limitations are inconsistent with the other evidence). Moreover, to the extent that Dr. Heffington's submissions to the Appeals Council offer an assessment of Dr. Plummer's findings, he is attempting to reinterpret evidence already considered by ALJ Allen.

Accordingly, because the additional evidence documents similar diagnoses and limitations as those already considered by ALJ Allen and because it is also inconsistent with the

other evidence of record, this additional evidence would not have changed ALJ Allen's determination. As Hollowell has failed to demonstrate that the additional evidence was new and material, the Appeals Council was not required consider it further. Having failed to present a meritorious issue, Hollowell's request for remand on this issue is unwarranted.

### E. Treating physician's opinion

Hollowell next argues that ALJ Allen erred when he rejected the opinions Dr. Heffington, as the treating provider, as inconsistent with the medical evidence of record without identifying the conflicting evidence. ALJ Allen found that the mild to moderate objective findings in the medical record as a whole were inconsistent with Dr. Heffington's opinions which, as noted above, found that Hollowell: could sit/stand/walk only two hours in an eight hour workday; would require 30 minute breaks six to eight times per day; and could lift no more than ten pounds. Hollowell contends that ALJ Allen failed to sufficiently explain his reasons for giving Dr. Heffington's opinions little weight. He further maintains that ALJ Allen disregarded Hollowell's allegations of chronic pain, despite the fact that objective evidence of pain is not determinative. The Commissioner contends that ALJ Allen properly considered Dr. Heffington's findings and weight them appropriately. The undersigned determines that the ALJ properly considered the evidence.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not

11

be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

Dr. Heffington treatment notes reflect that he based his limitations on Hollowell's subjective reports as well as the results of a nerve conduction study and an MRI of the lower spine. It first bears noting that subjective complaints of pain, alone, cannot establish disability. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) ("a subjective allegation of pain, standing all alone, shall not be conclusive evidence of disability"). Additionally, Dr. Lorentzen,

who interpreted the MRI, noted it showed only mild degenerative changes and no significant disc disease. Tr. at 265–66. Dr. Heffington's opinion is also inconsistent with Dr. Plummer's consultative examination, which found negative Tinel's, Spurling's and Phalen's tests as well as no muscle atrophy, swelling or joint tenderness. *Id.* at 245. Dr. Plummer opined that Hollowell could sit/stand/walk for a full workday and lift/carry without restriction. *Id.* at 246. In sum, the objective medical evidence demonstrates a lesser level of restriction than Dr. Heffington found. Thus, the persuasive contrary evidence in the record constitutes substantial evidence supporting ALJ Allen's consideration of Dr. Heffington's opinion.

With respect to a claimant's allegations of pain, Hollowell contends that ALJ Allen required him to produce objective evidence to support his allegation of pain. ALJ Allen noted that Hollowell's pain allegations but found that they were not fully credible. *Id.* at 32. In doing so, ALJ Allen observed the lack of objective findings in the record supporting his wrist, elbow, shoulder, and back pain. *Id.*

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. First, the ALJ must determine whether the plaintiff has a medical impairment "which could reasonably expected to produce the pain or other symptoms alleged." *Id.* (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the plaintiff's pain or other symptoms, and the extent to which it affects her ability to work. *Id.* at 595. At this second step, the ALJ considers "not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the

severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (citing 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2)).

The law is well settled in the Fourth Circuit that an ALJ may not require objective evidence of a claimant's pain where objective medical evidence establishes the existence of some condition or impairment that could reasonably be expected to have produced the pain alleged. *See Craig*, 76 F.3d at 592–593 ("[W]hile a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'") (quoting *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986)). However, objective medical evidence "is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of" a claimant's pain. 20 C.F.R. §§ 404.1529(c)(2), 416.919(c)(2). Where objective medical evidence is present, the ALJ "must consider it in evaluating the individual's statements." S.S.R. 96–7p, 1996 WL 374186, at *6.

Here, ALJ Allen found Hollowell's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible for the reasons explained in this decision." Tr. at 32. ALJ Allen noted that Hollowell's musculoskeletal problems and other conditions were controlled and stabilized with medications, that he had received conservative treatment, and that he had a sparse course of medical treatment. *Id.* Additionally, ALJ Allen noted the following: normal wrist strength, normal left should strength and normal right elbow strength, a nerve conduction study showed only mild peripheral neuropathy, an MRI of the lumbar spine showed only mild degenerative changes, and

in November 2012, Hollowell denied any numbness or tingling in his extremities. *Id.* at 31. This evidence, which is properly considered under SSR 96-7p, supports ALJ Allen's determination that Hollowell's pain was not as debilitating as alleged. Consequently, ALJ Allen did not err in evaluating Hollowell's pain symptoms.

### F. Sit/stand option

Hollowell next contends that ALJ Allen erred at step five because the hypothetical questions posed to the VE did not specify with what frequency Hollowell would need to alternate between sitting and standing as required by S.S.R. 83-12. In pertinent part, S.S.R. 83–12 provides the following guidance to an ALJ when making a disability determination for a claimant requiring a sit/stand option:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.

SSR 83–12, 1983 WL 31253, at *4 (Jan. 1, 1983).

15

Case 4:14-cv-00162-FL   Document 23   Filed 08/12/15   Page 15 of 18

At the hearing, ALJ Allen posed a hypothetical question to the VE based on Hollowell's RFC and included the following: "This individual would require a sit/stand [adjust][2] option. . . I mean that this individual would work in an occupation where he or she could sit, stand adjust the body as necessary without a loss of production." Tr. at 63–64. In responding to the hypothetical questions, the VE stated that such an individual would be unable to perform past work as a commercial fisherman, but that there were jobs that existed in the national economy for an individual limited as reflected in the RFC and hypothetical question. *Id.* at 64. The VE identified three positions — assembler, packer, and marker-pricer — that an individual with such limitations could perform. *Id.*

A fair reading of the transcript indicates that ALJ Allen did, in fact, specify the frequency for the sit/stand option. ALJ Allen stated that the individual in the hypothetical would need to "sit, stand, adjust the body *as necessary*[.]" *Id.* at 63–64 (emphasis added). Even if this language did not explicitly state the frequency, it implies that the option to alternate sitting and standing is at-will. "[W]here an ALJ fails to specify the frequency of alteration in a sit/stand option, the reasonable implication is that the claimant can sit or stand at his own volition." *Campbell v. Colvin*, No. 1:11-cv-327, 2014 WL 2815781, at *5 (M.D.N.C. June 23, 2014); *see also Williams v. Barnhart*, 140 F. App'x 932, 936–37 (11th Cir. 2005); *Wright v. Astrue*, No. 1:09-CV-0003, 2012 WL 182167, at *8 (M.D.N.C. Jan. 23, 2012); *Vallejo v. Astrue*, Civil No. 3:10–CV–00445–GCM–DCK, 2011 WL 4595259, at *8–10 (W.D.N.C. Aug. 4, 2011); *Smith v. Astrue*, No. 5:09-cv-158-RS-EMT, 2010 WL 3749209, at *19 n.26 (N.D. Fla. Aug. 25, 2010). This court, and others within the Fourth Circuit, have held that an at-will limitation meets the frequency requirement of a sit/stand option sufficiently for judicial review. *See Williams v. Barnhart,* 140

---

[2] The transcript states a "sot/stand in gist" option. Tr. at 63. It is clear from the context of the transcript that ALJ Allen stated "sit, stand, adjust option."

Fed. App'x 932, 936–37 (11th Cir. 2005) (holding "although the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand option, the reasonable implication of the ALJ's description was that the sit/stand option was at [the claimant's] own volition"); *Hedspeth v. Astrue*, No. 11–CV–38–FL, 2012 WL 4017953, at *5 (E.D.N.C. Sept. 12, 2012) (holding that an "at-will" limitation is sufficient to satisfy the frequency requirement for a sit/stand option); *Pierpaoli v. Astrue*, No. 4:10–2401–CMC–TER, 2012 WL 265023 (D.S.C. Jan. 30, 2012).

Although a VE testified at the hearing, he did not offer testimony regarding the erosion of the occupational bases of the jobs identified due to the sit/stand requirement. Tr. 63–65. Nonetheless, courts have not interpreted S.S.R. 83-12 "to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if . . . the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform." *Martin v. Barnhart*, 240 F. App'x 941, 946 (3d Cir. 2007) (quoting *Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003)); *Burgess v. Astrue*, No. 2:07-3022, 2008 WL 4904874, at *6 (D.S.C. Nov. 13, 2008).

Here, ALJ Allen's hypothetical to the VE was proper in that it included the sit/stand option. The VE identified three jobs within Hollowell's RFC. Thus, the Commissioner has satisfied her burden at step five with respect to this issue. Accordingly, Hollowell's argument on this issue lacks merit.

**III. Conclusion**

For the forgoing reasons, the court recommends that Hollowell's Motion for Judgment on the Pleadings should be denied, that Colvin's Motion for Judgment on the Pleadings should be granted, and that the Commissioner's final decision should be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 12, 2015.

  *Robert T. Numbers II*
  ROBERT T. NUMBERS, II
  UNITED STATES MAGISTRATE JUDGE