IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CV-162-FL

| | |
|---|---|
| MICHAEL A. HOLLOWEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings (DE 16, 21). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the deadline for defendant's response has passed. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, and upholds the decision of the Commissioner.

**BACKGROUND**

Plaintiff filed an application for disability benefits on June 6, 2011, alleging disability beginning November 1, 2009. This application was denied initially and upon reconsideration. A hearing was held on April 29, 2013, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled in a decision dated June 14, 2013. Plaintiff submitted additional evidence in seeking review by the appeals council. After the appeals council denied plaintiff's

request for review, plaintiff commenced the instant action on August 26, 2014, seeking reversal of defendant's final decision, or, in the alternative, remand to defendant for further proceedings.

**DISCUSSION**

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute the judgment of the court for that of the ALJ. Craig, 76 F.3d at 589, citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any

explanation for adopting the M&R.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> "(1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work."

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).  The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date of November 1, 2009, and the date of decision.  At step two, the ALJ found that plaintiff had the following severe impairments: bilateral neuropathy of the elbow and wrist, diabetes mellitus, carpal tunnel syndrome, degenerative disc disease of the lumbar spine, and obesity.  However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations.

Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, except that:

> he can only occasionally climb stairs and ramps; only occasionally perform any bending, balancing, stooping, crawling, kneeling, or crouching; and he can never

climb ropes, ladders, or scaffolds. He can perform occasional overhead reaching bilaterally and frequent, but not constant, reaching in any other direction bilaterally. He should avoid hazardous machinery and exposure to vibrations. He can perform frequent, but not constant, handling, fingering, and grasping. He requires a sit or stand or adjusts option, in which he alternates between those positions without a loss of production. He will need to wear knee, shoulder, and wrist brace that will not affect production.

(Tr. 29). In making this assessment, the ALJ found plaintiff's statements about the severity of his symptoms not fully credible. At step four, the ALJ concluded plaintiff was not capable of performing any past relevant work. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

B. Analysis

Plaintiff raises objections to the magistrate judge's treatment of plaintiff's three claims. First, plaintiff argues that the Appeals Council erred in declining to vacate the decision of the ALJ on the basis of new evidence submitted to the Appeals Council, and that the new evidence renders the ALJ's decision unsupported. Second, plaintiff argues that the ALJ improperly weighed the opinion of plaintiff's treating physician, Dr. Heffington. Third, plaintiff argues that the ALJ erred in failing to specify the frequency of alternation when including the sit/stand option in the RFC. The court will address each claim de novo in turn.[1]

1. New Evidence

Plaintiff submitted new evidence to the Appeals Council in the form of Dr. Heffington's October 17, 2013, response to questions posed by plaintiff's representative and clinical assessment of pain form. (Tr. 310-313). Plaintiff also submitted a letter describing his impairments and symptoms. (Tr. 229). In denying review, the Appeals Council stated that it considered the

---

[1] The court departs from the reasoning of the M&R on plaintiff's claims as noted herein.

4

additional evidence submitted by plaintiff, and it "found that this information does not provide a basis for changing the [ALJ's] decision."  (Tr. 2).

"The Appeals Council must consider evidence submitted with [a] request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)).  "Evidence is new within the meaning of this section if it is not duplicative or cumulative." Id. at 96 (citing Williams, 905 F.2d at 216).  "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."  Id.

In this case, the Appeals Council considered plaintiff's new evidence and took it into the record. (Tr. 1-2). Having done so, the Appeals Council was required to consider the new evidence "in determining whether to grant review, even though it . . . ultimately decline[d] review." Wilkins, 953 F.2d at 95.  Where "the Appeals Council denied review, the decision of the ALJ became the final decision of the Secretary." Id. at 96.  Because the Appeal's Council specifically incorporated the new evidence into the record, the remaining task for the court is to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings."  Id.

In this case, the new evidence in the form of plaintiff's letter (Tr. 229) does not provide a basis for reversal or remand of the ALJ's decision, where the ALJ already addressed in detail plaintiff's description of his impairments and symptoms. (See Tr. 29, 32). The new evidence in the form of Dr. Heffington's October 17, 2013, response to questions posed by plaintiff's representative and clinical assessment of pain form, (Tr. 310-313), by contrast, may be pertinent to the

5

determination of whether the ALJ correctly weighed Dr. Heffington's opinion. As this is the subject of plaintiff's second claim for relief, the court turns now to that claim, "review[ing] the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96.

    2.    Treating Physician

When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. In addition, an ALJ generally must give "greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson, 434 F.3d at 654 (internal quotations omitted). "[If] a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [an ALJ] will give it controlling weight." Craig, 76 F.3d at 590. By contrast, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. The ALJ "must 'give good reasons in [his] notice of determination or decision for the weight [he] give[s][the] treating source's opinion.'" Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir.2011) (quoting 20 C.F.R. § 404.1527(d)(2)). In particular, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

6

In a medical source statement dated January 24, 2013, Dr. Heffington opined that plaintiff was able to walk less than one block without rest or severe pain; able to sit or stand for only 10 minutes at one time; able to sit or stand for a total 2 hours each during an eight-hour workday; required to walk for 10 of every 20 minutes; and required to take 30 minute unscheduled breaks six to eight times during an eight hour workday. (Tr. 276-9). Dr. Heffington also opined that Plaintiff could occasionally lift less than ten pounds and had significant limitations in reaching, handling and fingering. (Tr. 278). Dr. Heffington identified the following clinical findings and objective signs in connection with his statement: "Abnormal labs (glucose), abnormal nerve conduction studies, [and] abnormal MRI spine." (Tr. 276).

In assessing the opinion of Dr. Heffington, the ALJ gave the opinion "little weight because [it] is inconsistent with the medical records as a whole with no more than mild to moderate objective findings." (Tr. 33). The ALJ also noted that he "provides for the limitation to the extent that the claimant is capable of performing the residual functional capacity discussed in [the ALJ's opinion]." (Id.).

Plaintiff faults the ALJ for not identifying more specifically objective medical evidence contrary to the opinion of Dr. Heffington. However, the ALJ described in detail the objective medical evidence immediately prior to assessing physician's opinions, including references mild to moderate clinical findings in multiple instances:

> (1) On musculoskeletal exam [in July 2011], the Tinel's Phalen's and Spurling's test <u>were negative</u> as well as the exam revealed <u>no</u> muscle atrophy, involuntary movements, structural deformity, effusion, swelling, or tenderness on any joint. The claimant's gait and station <u>were normal</u>; his grip strength <u>was normal</u> 5/5 with adequate fine motor movements, dexterity and his ability to grasp objects bilaterally . . . The Rhomberg was negative and the claimant's reflexes showed <u>no abnormality</u>. (Tr. 30, citing Tr. Ex. 2F) (emphasis added).

7

(2) [On exam on September 6, 2011, plaintiff's] right elbow strength <u>was normal</u>; left shoulder strength <u>was normal</u>; right wrist strength <u>was normal</u> but his right and left hand strength <u>was decreased</u>; as well as his upper extremity neurovascular <u>was normal</u> except for his right and left elbow ulnar nerve sensory distribution. (Tr. 31, citing Tr. Ex. 4F) (emphasis added).

(3) On September 22, 2011, the claimant had a nerve conduction study which revealed that he had <u>mild peripheral neuropathy</u>. (Ex. 3F). By September 27, 2011, the claimant returned to a follow up and reported sign and symptoms unchanged. (Ex. 4F). However, the nerve study result only revealed <u>mild spread diabetic poly-peripheral neuropathy</u> with <u>some evidence</u> of entrapment neuropathies at the elbows and wrist. (Tr. 31) (emphasis added).

(4) On July 26, 2012, MRI of the lumbar spine revealed <u>only mild degenerative changes</u> in the lower spine but no significant disease. (Tr. 31, citing Tr. Ex. 8F and 6F).

In this manner, the ALJ's opinion provides ample detail as to the substantial evidence relied upon by the ALJ in giving little weight to the opinion of Dr. Heffington. In light of the detailed description of medical records and multiple references to "mild" and "normal" findings, in addition to only moderate additional limitations, the ALJ sufficiently explained the basis for giving little weight to the opinion of Dr. Heffington.

As noted previously, plaintiff suggests that the new evidence undermines the ALJ's determination to give little weight to the opinion of Dr. Heffington. The statements by Dr. Heffington in his response to questions posed by plaintiff's representative and clinical assessment of pain form, however, suffer from the same deficiencies as his original opinion in the record. (Tr. 276, 310, 313). For example, Dr. Plummer states that he disagrees with the findings of Dr. Plummer, a physician who conducted a consultative examination and rendered opinion in July 2011. (DE 246, 310). As reasons for the disagreement he states: "His neurological exam (he has positive Tinel's <u>and</u> Phalen's signs in both wrists, positive Tinel's at both elbows – is <u>not</u> in 'no acute distress' – I do agree with her statement that he is reliable in giving his history – but her conclusion

8

is not consistent with her own statement." (Tr. 310). Dr. Heffington also opines that plaintiff "has severe retractable neuropathic pain in all extremities. His mobility is severely limited and he is unable to stand for long, walk far, lift or manipulate objects, or stay in one position for a long time." (Tr. 313).

Dr. Heffington does not identify what neurological exam resulted in positive Tinel's and Phalen's signs, and the only such exam results identified in the record for the period of disability at issue in this case are those conducted by Dr. Plummer, who found <u>negative</u> Tinel's and Phalen's tests. (Tr. 245). To the extent Dr. Heffington is referencing an exam and test conducted after the ALJ's decision, such results are not in the record. Dr. Heffington's remaining opinions as to plaintiff's functional capacity mirror his original opinion, and thus the ALJ's reasons for giving little weight to the original opinion apply equally to his opinion in October 2013, to the extent it relies on clinical evidence relating to the period of disability.

In sum, the ALJ properly explained his reasons for giving little weight to the opinion of Dr. Heffington, and substantial evidence supports the ALJ's determination to do so, including with consideration of the new evidence considered by the Appeals Council.

3. Sit / Stand Option

Plaintiff argues that the ALJ erred in failing to specify the frequency of alternation when including the sit/stand option in the RFC. The magistrate judge cogently addressed plaintiff's argument, (DE 23 at 15-17), and plaintiff's objections do not provide a basis to disturb this analysis. Accordingly, the court adopts the analysis of the magistrate judge as to this claim.

9

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation in the M&R, overrules plaintiff's objections, and upholds the Commissioner's decision. Accordingly, plaintiff's motion for judgment on the pleadings (DE 16) is DENIED, and defendant's motion for judgment on the pleadings (DE 21) is GRANTED. The clerk is DIRECTED to close the case file.

SO ORDERED, this the 30th day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge